## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TEL-LOCK, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 03 C 320 |
| ) | Judge Joan H. Lefkow |
| THOMSON CONSUMER ELECTRONICS ) | Magistrate Judge Brown |
| and JASCO PRODUCTS COMPANY, L.L.C. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In this patent infringement action, plaintiff, Tel-Lock, Inc. ("Tel-Lock"), the manufacturer

of the Security Jack, claims that the defendants, Thomson Consumer Electronics ("Thomson") and

Jasco Products Company, L.L.C. ("Jasco"), infringed its United States Patent No. 5,774,543 (the

"'543 patent"), with their product, the Lock Jack. Jasco has filed counterclaims against Tel-Lock,

alleging that Tel-Lock is liable for trademark infringement, deceptive trade practices, and unfair

competition. Jurisdiction is invoked over the parties' claims pursuant to 28 U.S.C. §§ 1331 and

1338.

Presently before the court is defendants' motion for summary judgment on the alternative

grounds that Jasco's Lock Jack does not infringe the '543 patent and that the '543 patent is invalid.

Defendants also move for summary judgment as to Tel-Lock's assertion of price erosion damages.

Tel-Lock has moved for summary judgment as to Jasco's counterclaims. In addition, defendants

have raised a number of objections to portions of the affidavit of Calvin Flowers ("Flowers I")[1] and

---

[1] Flowers I is attached as Exhibit C to Tel-Lock's Response to Jasco's Motion for Summary Judgment
Regarding Price Erosion, Patent Infringement and Patent Invalidity. Tel-Lock attached a different affidavit of Calvin
Flowers as Exhibit C to its Local Rule 56.1 Statement of Material Facts, which the court will call "Flowers II" for
purposes of this opinion.

certain responses of Tel-Lock to defendants' Local Rule 56.1 Statement of Uncontroverted Material Facts. Tel-Lock also moves to strike and exclude from evidence the report of Joseph B. Bowman ("Bowman report").[2] For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part. The court also grants Tel-Lock's motion for summary judgment as to defendants' counterclaims.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477

---

[2] The Bowman report is attached as Exhibit 5 to Defendants' L.R. 56.1 Statement of Uncontroverted Facts In Support of Defendants' Motion for Summary Judgment.

U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

In a patent infringement action, an accused infringer seeking summary judgment of noninfringement may meet its initial burden by providing evidence that would preclude a finding of infringement or by showing that the evidence fails to establish a material issue of fact essential to the patentee's case. *Vivid Techs.* v. *Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999). A court may grant summary judgment of noninfringement if, after viewing the alleged facts in the light most favorable to the patentee and drawing all reasonable inferences in the patentee's favor, there is no genuine issue as to whether the patent claims encompass the accused device. *Novartis Corp.* v. *Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Pitney Bowes, Inc.* v. *Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## I. LOCAL RULE 56.1

Before determining whether a genuine issue of material fact exists with regard to either Tel-Lock's claims or Jasco's counterclaims, the court must wade through the parties' Local Rule 56.1 filings. It is apparent to the court that both parties, Tel-Lock in particular, require instruction as to the straightforward Local Rules of the U.S. District Court for the Northern District of Illinois.

The Local Rules provide detailed instructions as to how litigants should approach their summary judgment motions and responses. Local Rule 56.1(a) provides that a motion for summary must include a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." This statement of material facts "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Part (b) of Local Rule 56.1 requires a party opposing summary

3

judgment to file a concise response to the movant's statement of material facts. That statement is required to include a response to each numbered paragraph in the moving party's statement, including in the case of any disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." The rule is very clear that "all material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(B).

## A.    Legal Conclusions

In this case, both parties failed to comply with Local Rule 56.1 to the extent that their filings state legal conclusions rather than material facts. *See Malec* v. *Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("[A] movant's 56.1(a) statement should *only* contain factual allegations. It is inappropriate to allege legal conclusions in a 56.1(a) statement on the off-chance that one's opponent might not file a correct response.") (emphasis in original); *Cady* v. *Miss Paige, Ltd.*, No. 02 C 4867, 2004 U.S. Dist. LEXIS 7613, 2004 WL 1144044 (N.D. Ill. Apr. 30, 2004) ("Local Rule 56.1 . . . emphasizes that it is inappropriate to include legal conclusions and/or argument in the Rule 56.1 statements of fact.").

Defendants include legal conclusions in paragraphs 6 and 7 of their Local Rule 56.1 Statement of Undisputed Facts. Paragraph 6 asserts the legal conclusion that the Lock Jack does not infringe the '543 patent because it does not contain one or more of the claimed elements of the '543 patent. Similarly, paragraph 7 states the legal conclusion that "[t]he claims of the '543 patent are invalid for obviousness . . . ." The court, therefore, strikes paragraphs 6 and 7 of the Defendants' Local Rule 56.1 Statement.

Tel-Locks's Local Rule 56.1 Response also contains legal conclusions. Paragraph 21 states in part, "The Lock Jack purchased from DBL was an infringing device." Paragraph 23 includes the similar assertion that the Dial Stop "does not infringe the '543 patent . . . ." In paragraph 6 of Tel-Lock's Local Rule 56.1 Statement of Additional Facts, Tel-Lock puts forth the legal conclusion that its Security Jack is covered by the '543 patent. The court strikes the cited portions of paragraphs 21 and 23 of Tel-Lock's Local Rule 56.1 Response and paragraph 6 of Tel-Lock's Local Rule 56.1 Statement of Additional Facts.

## B.    Citation to Supporting Evidence

Tel-Lock's Local Rule 56.1 filings are deficient in their citation to supporting authority. Parties are required to make "specific references" to the appropriate part of the record that supports their position. *See United States* v. *Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried" in the record); *Greer* v. *Bd. of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) ("a lawsuit is not a game of hunt the peanut."). "'Specific reference' means including proper Bluebook citations to exact pieces of the record that support the factual contention contained in the paragraph." *Malec*, 191 F.R.D. at 583. "In other words, citations must include page (or paragraph) numbers, as opposed to simply citing an entire deposition, affidavit, or other exhibit document . . . ." *Id.*

In its Local Rule 56.1 Response and Local Rule 56.1 Statement of Additional Facts, Tel-Lock repeatedly cites to Flowers I. *See* ¶¶ 6-10, 12, 14, 17, 21-33.[3] Nowhere, however, does Tel-Lock

---

[3]Tel-Lock also submitted an improper response to paragraph 19 of defendants' Local Rule 56.1 Statement of Uncontroverted Facts. Tel-Lock's response states, "Tel-Lock has no information regarding the stated fact herein, and as such neither admits or denies the statement contained therein." (Tel-Lock's L.R. 56.1 Response at ¶19). Tel-Lock's response to paragraph 8 of defendants' Local Rule 56.1 Statement of Uncontroverted Facts is also improper to the extent that it states that "Tel-Lock is without sufficient knowledge as to what Mr. Bowman did or did not do."

direct the court's attention to specific paragraphs of the affidavit. The court, therefore, strikes these paragraphs.[4]

Tel-Lock also repeatedly cites to Flowers II in its Local Rule 56.1 Statement of Material Facts, *see* ¶¶ 7-9, 11-12, but fails to direct the court's attention to the specific paragraphs of that affidavit. These paragraphs are therefore stricken. Tel-Lock further fails to provide pinpoint citations to exhibits F, G, H, and I, which are attached to Tel-Locks's Local Rule 56.1 Statement of Material Facts, although Tel-Lock has highlighted in yellow select portions of exhibits G, H, and I. The corresponding paragraphs in Tel-Lock's Statement of Material Facts, paragraphs 14 and 16-25, are therefore stricken.

In addition, Tel-Lock entirely fails to provide any citation to the facts contained in paragraphs 15 and 26 of its Local Rule 56.1 Statement of Material Facts and paragraphs 36 and 37 of its Local Rule 56.1 Statement of Additional Facts. The court strikes paragraphs 15 and 26 of Tel-Lock's

(Tel-Lock's L.R. 56.1 Response at ¶8). *See McGuire* v. *United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998). The responding party, instead, must "deny the allegations in the numbered paragraph with citations to supporting evidence in the record . . . ." *Id.* The failure to comply with this rule results in an admission. *Id.*

In addition, Tel-Lock cites to Flowers I in support of paragraph 33 of its Local Rule 56.1 Statement of Additional Facts, which states, "Jasco has sold its Lock Jack to Taylor Gifts." Flowers I, however, does not mention Taylor Gifts or provide any information regarding Jasco's purported sale of its Lock Jack to Taylor Gifts

[4]Several of these paragraphs also cite to Tel-Lock's Local Rule 56.1 Response Exhibit F, which is a photograph of the Lock Jack in which its various parts are identified. Tel-Lock has offered no foundation for this exhibit apart from paragraph 16 of Flowers I, which states, "A claim chart and a photograph of the Lock Jack is attached to Tel-Lock's brief at Exhibit F. The claim chart and illustration point out where each and every element of Claim 1 is found on Jasco's Lock Jack." (Flowers I at 16). The affidavit fails to identify the source of Flowers' knowledge. It is possible that he is basing this statement on his own observations of the Lock Jack, on inadmissible hearsay or speculation, or on some other proper or improper grounds. The court may not speculate or surmise as to which of these choices is correct. *See Miroballi Shoe, Inc.* v. *Nine W. Footwear Corp.*, 2004 U.S. Dist. LEXIS 10423, at *32 (N.D. Ill. June 8, 2004), citing *Ward* v. *First Federal Savings Bank*, 173 F.3d 611, 618 (7th Cir. 1999) (["The affiant] may be basing his statements on direct observations . . ., on inadmissible hearsay or speculation, or on some other grounds, proper or improper. The Court is not allowed to guess among these possibilities."). Since Flowers failed identify or set forth a proper foundation for this assertion or for Exhibit F, they must be disregarded for purposes of summary judgment. *Id.*

Local Rule 56.1 Statement of Material Facts and paragraphs 36 and 37 of its Local Rule 56.1 Statement of Additional Facts for failing to cite to any supporting materials.

## C.    Flowers I

Rule 56(e) of the Federal Rules of Civil Procedure "requires that affidavits offered in opposition to summary judgment be made on personal knowledge, . . . setting forth such facts as would be admissible in evidence, and . . . showing affirmatively that the affiant is competent to testify to the matters stated therein." *Drake* v. *Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (quotation omitted). "'Personal knowledge' includes inferences -- all knowledge is inferential -- and therefore opinions. But the inferences and opinions must be grounded in observation or other first-hand experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Vissier* v. *Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (citations omitted); *see also Toro Co.* v. *Krouse, Kern & Co.*, 827 F.2d 155, 162-63 (7th Cir. 1987) ("Statements based merely on information and belief do not satisfy the standards of Rule 56(e)."). Rule 56(e) "requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake*, 134 F.3d at 887 (quotation omitted). Furthermore, "because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which the affiant is competent to testify, legal argument in an affidavit may be disregarded." *Pfeil* v. *Rogers*, 757 F.2d 850, 862 (7th Cir. 1985), *cert. denied*, 475 U.S. 1107, 89 L.Ed. 2d 912, 106 S. Ct. 1513 (1986).

In addition, it is well settled that "conclusory allegations and self-serving affidavits without support in the record do not create a triable issue of fact." *See Patterson* v. *Chicago Ass'n for*

*Retarded Citizens*, 150 F.3d 719 at 724 (7th Cir. 1998). "Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless . . . a plausible explanation for the discrepancy [is provided in the affidavit]." *Russell* v. *Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995); *see Richardson* v. *Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988) ("It is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony.") (citations omitted). Defendants argue that the court should disregard certain portions of Flowers I because such portions may only be characterized as speculation and conjecture. For the sake of clarity, these portions of Flowers I are addressed below.

     1.     Paragraph 8

The court will disregard the conclusional allegation in Paragraph 8 that Jasco began selling a competing and infringing product called Lock Jack to the extent that it specifies that the Lock Jack was competing and infringing.

     2.     Paragraph 9

Paragraph 9 states, "Tel-Lock has been severely affected by Jasco's marketing of its Lock Jack. We have gone head-to-head competing with Jasco for sales of the Security Jack and the Lock Jack." Flowers I, ¶ 9. Flowers I, however, provides no basis for this assertion. Similarly, Tel-Lock fails to offer any evidence that customers purchased Jasco's product over Tel-Lock's product based on price or that any potential customers considered both products. Because paragraph nine lacks "specific concrete facts establishing the existence of the truth of the matter asserted," *Drake*, 134 F.3d at 887, the court will disregard it.

### 3. Paragraph 10

Paragraph 10 of the Flowers I asserts, in part, that "[b]ecause of Jasco's infiltration of the marketplace with its Lock Jack at a price of what appears to be less than $4.00 each, Tel-Lock has been forced to lower its wholesale price to under $4.00 in order to compete." Flowers I, ¶ 10. Flowers' statement that the Lock Jack sold at a price of "what appears to be less than $4.00 each" lacks the requisite specificity and concreteness required under Rule 56(e). Either the Lock Jack was sold at a price of less than $4.00 each or it was sold at a price of more than $4.00 each. Flowers does not provide any explanation for this ambiguity or any factual support for this claim. The court, therefore, will disregard paragraph 10.

### 4. Paragraph 11

Similarly, Paragraph 11 lacks a factual basis. In this paragraph, Flowers states:

> *It is my belief* that Tel-Lock would have continued its commercial success at selling the Security Jack at a price near $12.95 or more if Jasco had not manufactured, marketed and sold its Lock Jack for *what I understand to be less than $4.00.* Jasco's reduced price has forced Tel-Lock to substantially lower its prices and therefore lose profits. *In my belief,* the same quality of units we are now selling at under $4.00 would have been sold at or near $12.95 had Jasco not infringed the '543 patent.

Flowers I, ¶ 11 (emphasis added). Unfortunately for Tel-Lock, Flowers' beliefs and understanding, without factual support, do not meet the standards of Rule 56(e). *See Toro Co.*, 827 F.2d at 162-63. Thus, the court will disregard paragraph 11.

### 5. Paragraph 12

The court will disregard paragraph 12 because it contains the conclusory allegation that Jasco's Lock Jack infringes claims 1-4 of the '543 patent.

9

6.    Paragraph 17

The court will disregard the conclusory allegation that "[n]either the Sizemore nor Walker patents contain all of the elements of any claims of the '543 patent."

7.    Paragraph 18

The court will disregard the conclusory allegation that "[e]ach and every limitation is found in Jasco's Lock Jack device."

8.    Paragraph 25

In paragraph 25, Flowers states that he purchased a Jasco Lock Jack from DBL for approximately $4.69 in 2001 and that this Lock Jack was the same device as the Lock Jack at issue in this lawsuit. Defendants take issue with the bases for Flowers' assertions in this paragraph, contending that Flowers was not sure if he purchased this device or could identify it as a Jasco product. Defendants further note that Flowers did not know when, or even if, the product was an infringing product from Jasco or when DBL began to sell the product at $4.69.

During his deposition, Flowers stated that he believed that he had bought the product advertized in the DBL magazine and that the product he purchased had "Jasco" on it. (Def. L.R. 56.1, Ex. 10 at 286-87). The product in the DBL magazine, however, said either "Jack Lock Out" or "Jack Lock." *Id.* Flowers conceded that he did not know when DBL began to sell the product or precisely when DBL began to sell the product at $4.69 other than it had been over a year. *Id.* at 288. Although the court is troubled by the inconsistencies in Flowers' affidavit and deposition testimony, it is unconvinced that these inconsistencies amount to contradictions such that the court should disregard paragraph 25 of the affidavit, particularly where the court must construe the facts in the

10

light most favorable to Tel-Lock. The court, therefore, declines to disregard the entirety of paragraph 25 but will disregard the assertion that the Lock Jack that he purchased was the same "infringing" device.

9. Paragraph 26

In paragraph 26, Flowers states, "Menards purchased Jasco's Lock Jack product over Tel-Lock's Security Jack. There may have been others, but I have no knowledge of who Jasco's customers are." Flowers I, ¶ 26. This paragraph also presents several problems. First, the second sentence directly contradicts the first sentence. If Flowers has no knowledge of who Jasco's customers are, it does not follow that Flowers would then know that Menards is one of Jasco's customers. Putting that problem aside, another concern is raised by Flowers' deposition testimony. During his deposition, Flowers admitted that he had no tangible evidence that Menards was actually buying from Thomson or Jasco. (Def. Reply, Ex. 1 at 266). He admitted further that he could not recall a single instance in which someone had purchased a Jasco product over his product because of price. *Id.* at 291-92. In light of these admissions, it appears that Flowers' statement that Menards purchased the Lock Jack over the Security Jack is more properly characterized as speculation than fact. Thus, the court will disregard paragraph 26.

10. Paragraphs 27, 28, and 29

These paragraphs contain the conclusional allegations that "[t]he Dial Stop is not an acceptable alternative to users looking for the features of the Security Jack;"[5] "[t]he Security Jack Plus and the Dial Stop are not acceptable alternatives for a user desiring the features of the Security

---

[5]Flowers I at ¶ 27.

11

Jack;"[6] and "[n]one of the systems included in Jasco's Statement of Uncontroverted Facts are acceptable alternatives to a user seeking the features at the price at which it is sold."[7] Tel-Lock offers no explanation or any factual basis for these assertions. Thus, the court will disregard paragraphs 27, 28, and 29.

## D. Bowman Report

In support of their motion for summary judgment, defendants have submitted the Bowman Report, pursuant to Rule 26(A)(2)(B), Fed. R. Civ. P. (Def. L.R. 56.1, Ex. 5). Defendants also included select portions of Bowman's deposition testimony. (Def. L.R. 56.1, Ex. 6). Rule 26(A)(2)(B) requires that an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(A)(2)(B). Rule 702 of the Federal Rules of Evidence further obligates the court to ensure that any scientific testimony or evidence admitted be relevant and admissible. *See Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. . . ." The party offering the expert testimony bears the burden of proving its admissibility." *See Daubert*, 509 U.S. at 592, n.10 (citation omitted).

Bowman is an attorney who specializes in intellectual property law, including patent law. He has a bachelor of science in chemical engineering. In his report, Bowman offered the opinions that the Lock Jack does not infringe the '543 patent, the Security Jack is not covered by the '543

---

[6]Flowers 1 at ¶ 28.

[7]Flowers 1 at ¶ 29.

patent, and the '543 patent is invalid pursuant to 35 U.S.C. § 103. *See* Bowman Dep. at 19, lns. 3-15. During his deposition in this matter, Bowman stated that he is skilled in the art of patent prosecution and procedures; however, he is not a person of ordinary skill in the art of telephone circuitry design or electrical circuitry. (Bowman Dep. at 67-69). Bowman also admitted that he did not determine what the level of ordinary skill in the art is for the art at issue in the '543 patent. *Id.* at 68.[8]

A "person of ordinary skill in the art" is a hypothetical person having ordinary skill in the field and knowledge of all prior art. *Endress + Hauser Inc.* v. *Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997). It is not descriptive of some particular individual. *Id.* By his own admission, Bowman is not one of at least ordinary skill in the art applicable to the '543 patent, despite defendants' argument that Bowman is at least familiar with the prior art involved in this lawsuit and is familiar with the technology involved in this matter. Bowman also has not been shown to have the qualifications to testify as an expert in the field of telephone circuitry design or electrical circuitry. Thus, the question before the court is whether Bowman's expertise in the field of patent law may assist the court for purposes of summary judgment.

Generally, testimony from a patent attorney, not skilled in the art, as to how to construe the language of the patent will not be helpful and may be excluded. *Id.*; *Markman* v. *Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 134 L. Ed. 2d

---

[8]Defendants cite to paragraph 14 of their L.R. 56.1 Statement of Material Facts for their contention that the invention disclosed in the '543 patent was "relatively" simple, and that the level of ordinary skill in the art did not require a degree in electrical engineering. *See* Def. L.R. 56.1 Statement of Material Facts at ¶ 14; Memorandum of Authority and Argument in Support of Defendants' Motion for Summary Judgment at 12. A review of page 23 of Bowman's deposition testimony, which defendants cite in support, reveals the absence of any statement indicating the level of ordinary skill in the art applicable to the '543 patent. The court, therefore, strikes paragraph 14 of defendants' L.R. 56.1 Statement of Material Facts.

577, 116 S. Ct. 1384 (1996); *Abraskin* v. *Entrecap Corp.*, 55 F. Supp. 2d 224, 228 (S.D.N.Y. 1999); *Heidelberger Druckmaschinen AG* v. *Ohio Elec. Engravers, Inc.*, No. 98 C 7946, 2000 U.S. Dist. LEXIS 6581, at *13 (N.D. Ill. May 12, 2000). Bowman provided no assistance in his report or deposition testimony in construing the claims. In his report, Bowman simply listed in a summary fashion whether each claim element is present or absent from the devices at issue. *See* Def. L.R. 56.1, Ex. 5 at 3-5; *see also* Memorandum of Authority and Argument In Support of Defendants' Motion for Summary Judgment at 7 ("Review of the Lock-Jack product, the accused device, was undertaken by Mr. Bowman, and he compared the Lock-Jack product to the claim elements."). He also compared the claim elements with prior art in opining that the '543 patent is invalid, *see* Def. L.R. 56.1, Ex. 5, but he merely construed the claim elements as written. Bowman offered no guidance in understanding the terms of the claims or claim elements and did not attempt to give such terms any special meaning. The court, therefore, will not consider Bowman's report or deposition testimony for purposes of claim construction.

Defendants further argue that Bowman may provide assistance to the court on the issue of obviousness. Obviousness is a question of law and is based on the court's consideration of four relevant factors: "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims; (3) the level of ordinary skill in the art at the time of the invention; and (4) objective evidence of nonobviousness." *Miles Laboratories, Inc.* v. *Shandon, Inc.*, 997 F.2d 870 at 877 (Fed. Cir. 1993), *cert denied*, 127 L. Ed. 2d, 114 S. Ct. 943 (1994) (citing *Specialty Composites* v. *Cabot Corp.*, 845 F.2d 981, 989 (Fed. Cir. 1988). "The determination of whether the scope of the invention is obvious depends upon the opinion of experts based on their knowledge and experience in that particular art." *Heidelberg Harris, Inc.* v. *Mitsubishi Heavy Indus.*, No. 95 C 0673, 1996 U.S. Dist.

14

LEXIS 258, at *15 (N.D. Ill. Jan. 10, 1996). Bowman admittedly lacks ordinary skill in the art applicable to the '543 patent or any other particular technical discipline beyond his skills in the art of patent prosecution and procedures. *See* Bowman Dep. at 69, lns. 4-6. The court cannot imagine how an individual lacking even ordinary skill in the relevant art can offer reliable expert testimony regarding the same art. As a result, the court will not consider Bowman's testimony or the Bowman affidavit as it relates to the issue of obviousness.

## II. BACKGROUND

Tel-Lock owns all right, title and interest to the '543 patent, which is a phone jack locking apparatus, invented by its president, Calvin Flowers ("Flowers"). The '543 patented apparatus "provides a simple, inexpensive lockable telephone jack which blocks both incoming and outgoing calls." ('543 Patent, Def. L.R. 56.1, Ex. 3). Following the issuance of the '543 patent on June 30, 1998, Tel-Lock began manufacturing its Security Jack, which is a phone jack locking device purportedly an embodiment of the '543 patent.

In late 1997, a Jasco representative became aware of a marketing proposal for a product known as the "School Line." Jasco subsequently entered into a license agreement with Cynthia Sue Neal, the person representing that she was the sole inventor of the product, on June 18, 1998. The license agreement granted Jasco exclusive rights to the product that came to be known as the "Lock Jack." It is Jasco's Lock Jack that Tel-Lock claims infringes its '543 patent.

## III. ANALYSIS

### A. Infringement Analysis

An infringement analysis involves a two-step process in which the court first construes the

15

scope and meaning of the patent claims asserted. *Cybor Corp.* v. *FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). The factfinder then compares the properly construed claims to the allegedly infringing device. *Id.* at 1454; *Int'l Rectifier Corp.* v. *IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir. 2004). Infringement occurs when the accused device meets each claim limitation. *Dynacore Holdings Corp.* v. *U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004). Unless each and every requirement of a patent claim is found in the accused product, there can be no literal infringement. *See, e.g., Laitram Corp.* v. *Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). An accused device also may infringe a claim under the doctrine of equivalents if it performs substantially the same overall function, in substantially the same way, to produce substantially the same overall result as the claimed invention. *Warner-Jenkins Co.* v. *Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 137 L. Ed. 2d 146, 117 S. Ct. 1040 (1997); *Grover Tank & Mfg. Co.* v. *Linde Air Prods. Co.*, 339 U.S. 605, 608, 94 L. Ed. 1097, 70 S. Ct. 854, 856 (1950).

"In construing the claims, the analytical focus must begin and remain centered on the language of the claims themselves . . . ." *Texas Digital Sys.* v. *Telegenix, Inc.*, 308 F.3d 1193 at 1201-02 (Fed. Cir. 2002). In addition, "[t]he terms used in the claim bear a 'heavy presumption' that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art." *Id.* at 1202 (citations omitted). When determining the ordinary and customary meaning of a claim term, the court may review a variety of sources, beginning with the intrinsic evidence consisting of the claim terms themselves, the written specifications, drawings, and prosecution history. *Vitronics Corp.* v. *Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The court also may consult dictionaries, encyclopedias and treatises to determine the ordinary meaning of a word. *Texas Digital*, 308 F.3d at 1202-03.

1. Claim Construction

Tel-Lock contends that defendants' Lock Jack infringes Claim 1 of the '543 patent. Claims 2, 3, and 4 of the patent depend on Claim 1 and, accordingly, contain all of the limitations of Claim 1. 35 U.S.C. § 112. Tel-Lock concedes that the Lock Jack does not infringe Claim 5 of the '543 patent.

Claim 1 of the '543 patent requires a locking phone jack apparatus (i) having a phone jack assembly, (ii) a rotatable lock with a contact arm, (iii) a wire contact, (iv) a ground wire, (v) a transmission wire carrying a dial tone, (vi) a standard phone line receptacle connected to both the transmission wire and the grounded wire, and (vii) an integral phone jack line connected to the phone jack (viii) wherein the rotatable lock is capable of swinging between a first open circuit position while in its locked position to a second closed circuit position when it engages a wire contact. ('543 Patent, col. 4, lns. 4-13, Def. L.R. 56.1, Ex. 3).

Claim 2 recites: "The apparatus according to claim 1 wherein the wire contact is a ground wire contact." ('543 patent, col. 4, lns. 14-15, Def. L.R. 56.1, Ex. 3). Claim 3 recites: "The apparatus according to claim 1 wherein the wire contact is a transmission wire contact. ('543 patent, col. 4, lns. 16-17, Def. L.R. 56.1, Ex. 3). Claim 4 recites: "The apparatus according to claim 1 wherein the rotatable arm is made of one of the following: aluminum or copper." ('543 patent, col. 4, lns. 18-19, Def. L.R. 56.1, Ex. 3). Because neither party disputes that any of the claim terms have any meaning different than their ordinary meanings, the court will give the claim terms their ordinary meaning.

## 2.   Infringement

In the second step of the patent infringement analysis, the court compares the construed claims to the accused product, which, in this case, is the Lock Jack. Defendants assert that the Lock Jack lacks the claim elements of a "standard phone line receptacle connected to both the transmission wire and the ground wire" and "a wire contact." Defendants further contend that while Claim 1 specifies that there is a rotatable lock "capable of swinging between a first open circuit position while in its locked position to a second closed circuit position when it engages a wire contact hence enabling access to the dial tone," '543 patent col. 4, lns. 4-13, the structural element of "a wire contact" is not associated with, related to, or connected to the standard phone line receptacle.

In support of these assertions, defendants rely on the deposition testimony of Bowman and the Bowman report. For the reasons stated above, however, the court will not consider either Bowman's testimony or the Bowman report. As a result, defendants have not met their burden of demonstrating the absence of a genuine issue of material fact entitling them to summary judgment on Tel-Lock's claim of patent infringement.

### B.   Price Erosion Damages

Under 35 U.S.C. § 284, a patentee is entitled to at least a reasonable royalty for infringement of its patents: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." A patentee may also seek lost profit damages for infringement. Lost profits may be the result of diverted sales, price erosion, and increased expenditures caused by infringement. *Lam, Inc.* v. *Johns-Manville*

18

*Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

A patent owner may recover actual damages for price erosion by showing that the infringement caused the patent owner to charge lower prices than the market would otherwise have dictated. *Amstar Corp.* v. *Envirotech Corp.*, 823 F.2d 1538, 1543 (Fed. Cir. 1987). The price erosion theory of damages is "the difference between actual costs of goods and potential price – the price they could have realized had there been no competition from the infringers." *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 831 F. Supp. 1354, 1386 (N.D. Ill. 1993). In order to recover price erosion damages, the patentee must show that, "but for" the infringement, it would have been able to charge and receive a higher price. *Minco, Inc.* v. *Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996). "To show 'but for' causation and entitlement to lost profits, a patentee must reconstruct the market to show, hypothetically, 'likely outcomes with infringement factored out of the economic picture.'" *Crystal Semiconductor Corp.* v. *Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 at 1355 (Fed. Cir. 2001) (citing *Grain Processing Corp.* v. *Am. Maize-Prods.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). Although hypothetical, this market reconstruction requires "sound economic proof of the nature of the market." *Id.* In addition, the patentee's theory of price erosion "must account for the nature, or definition, of the market, similarities between any benchmark market and the market in which price erosion is alleged, and the effect of the hypothetically increased price on the likely number of sales at that price in that market." *Id.* at 1357. "In a market with only two viable competitors, one may infer that the patentee would have made the infringer's sales or charged higher prices but for the infringing competition. *Amstar*, 823 F.2d at 1543 (citing *Lam*, 718 F.2d at 1056).

Defendants argue that they are entitled to summary judgment on Tel-Lock's assertion of price

erosion damages because Tel-Lock has failed to produce any evidence to suggest hypothetical price increases or Tel-Lock's ability to maintain a price in the market even in the absence of the Lock Jack. Defendants further assert that Tel-Lock merely speculates that it could have made sales at a higher price absent the defendants' infringement. Tel-Lock, however, contends that it is entitled to price erosion damages because the Security Jack and Lock Jack are the only comparable devices selling in the same price range and that "real-world evidence" supports the conclusion that Tel-Lock could have charged higher prices but for Jasco's infringement. (Tel-Lock's Response at 4).

Tel-Lock repeatedly cites to Flowers I for this "real-world evidence." For example, Tel-Lock asserts that before Jasco began marketing its Lock Jack to national resellers, including Radio Shack, Menards, and DBL Catalog, Tel-Lock was successfully marketing and selling its Security Jack to Walgreens for $12.99. Flowers I, however, only supports Tel-Lock's assertion that it sold Security Jacks to Walgreens for $12.99. While the court accepts as true for purposes of deciding this summary judgment motion that Flowers purchased a Jasco Lock Jack from DBL for approximately $4.69 in 2001, Flowers I mentions nothing of Radio Shack. Moreover, Flowers I merely asserts the conclusion that the Dial Stop and Security Jack Plus, two acknowledged, non-infringing alternatives to the Security Jack offered by Tel-Lock, are unacceptable alternatives to the Security Jack without providing any evidence as to why the Dial Stop and Security Jack Plus are unacceptable or whether either product affected consumer demand for Tel-Lock's Security Jack.

Tel-Lock has not offered any evidence, expert or otherwise, regarding the nature of the market, the similarities between any benchmark market and the market in which price erosion is alleged, and the effect of the hypothetically increased price on the likely number of sales at that price in that market. *See Crystal Semiconductor Corp.*, 246 F.3d at 1357. Tel-Lock also has not provided

any evidence showing that the market contained only two viable competitors, which would have entitled Tel-Lock to the inference that it would had made the infringer's sales or charged higher prices but for the infringing competition. *Amstar*, 823 F.2d at 1543 (citing *Lam*, 718 F.2d at 1056). Given this absence of evidence, the court finds that no reasonable juror could conclude that Tel-Lock was forced to lower its prices because of the alleged infringement. The court, therefore, grants defendants' motion for summary judgment as to Tel-Lock's assertion of price erosion as a measure of damages.

## C. The Validity of the '543 Patent Under 35 U.S.C. § 103

Defendants assert that the '543 patent is invalid under 35 U.S.C. § 103 because it is obvious in light of prior art. Patents are presumed valid. 35 U.S.C. § 282. Thus, "it is not part of a patent owner's initial burden of going forward with proof of its case to submit evidence supporting validity. Rather, the burden is first on the challenger to introduce evidence which raises the issue of invalidity." *Avia Group Int'l, Inc.* v. *L.A. Gear Calif., Inc.*, 853 F.2d 1557 at 1562 (Fed. Cir. 1988). In order to overcome the presumption of avlidity, defendants must show invalidity by facts supported by clear and convincing evidence. *Beckson Marine, Inc.* v. *NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002). Invalidity often involves evidence that prior art rendered the patent either anticipated or obvious. *Id.* In this case, defendants assert that the Sizemore and Walker/Weeks patents rendered the '543 patent obvious.

An obviousness inquiry assesses "the difference between the subject matter sought to be patented and the prior art" to ascertain whether "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said

21

subject matter pertains." 35 U.S.C. § 103(a). In order to prevent the use of hindsight in evaluating obviousness, the party challenging the patent must show a motivation to combine or move beyond the prior art. *Beckson Marine, Inc.*, 292 F.3d at 727-28. As the court mentioned previously, obviousness is a question of law based on the court's consideration of four relevant factors: "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims; (3) the level of ordinary skill in the art at the time of the invention; and (4) objective evidence of nonobviousness." *Miles Laboratories, Inc.*, 997 F.2d at 877.

While the parties agree that the level of ordinary skill in the art relevant to the '543 patent does not require a degree in electrical engineering, defendants did not produce evidence of the level of ordinary skill in the art. It is also unclear whether the level of ordinary skill pertains to a person with ordinary skill in the art of telephone circuitry or electrical circuitry or something else. Such evidence is necessary to establish whether the patent was obvious in light of the prior art. *See Custom Accessories, Inc.* v. *Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986) ("Without [a factual determination of the level of ordinary skill in the art], a district court cannot properly assess obviousness because the critical question is whether a claimed invention would have been obviousness at the time it was made to one with ordinary skill in the art.").[9] In addition, defendants offered no testimony from a person possessing ordinary skill in the art relevant to the '543 patent nor did defendants address any secondary considerations of non-obviousness.[10] In the absence of such

---

[9]Factors that may be considered when determining the level of skill in the art include: type of problems encountered in art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of technology; and educational level of active workers in the field. *Custom Accessories, Inc.*, 807 F.2d at 962.

[10]Objective evidence of nonobviousness includes commercial success, long-felt but unresolved need, failure of others, and copying. *Id.* at 960.

evidence, the court cannot determine as a matter of law that the '543 patent is obvious.

**D.      The Validity of the '543 Patent Under 35 U.S.C. § 112**

Defendants further assert that the '543 patent is invalid for indefiniteness pursuant to 35 U.S.C. § 112. "The requirement that the claims 'particularly point[] out and distinctly claim[]' the invention is met when a person experienced in the art of the invention would understand the scope of the subject matter that is patented when read in conjunction with the rest of the specification." *S3 Inc.* v. *nVIDIA Corp.*, 259 F.3d 1364 at 1367 (Fed. Cir. 2001). "If the claims when read in the light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 requires no more." *Id.* (citations omitted).

Defendants argue that the claims of the '543 patent do not interrelate the essential elements of the invention as defined by the patentee in the specification. Defendants point to the wire contact in claim 1, which also requires a wire contact to come in contact with the rotatable lock without specifying whether there is more than one wire contact or how the rotatable lock engages the wire contact, as an example of the '543 patent's lack of clarity. Defendants, however, have offered no evidence that a person skilled in the art of the '543 patent would not understand the scope of the patent. While the court agrees the '543 patent's claims cannot be rewritten so as to make them operable or sustain their validity, *see Chef America Inc.* v. *Lamb Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004), defendants have not met their burden of establishing by clear and convincing evidence that all "reasonable efforts at claim construction [have] prove[n] futile." *Bancorp Servs., L.L.C.* v. *Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004). Defendants motion for summary judgment on the invalidity of the '543 patent pursuant to 35 U.S.C. § 112 is denied.

### E.    Trademark Infringement

Tel-Lock seeks summary judgment as to Jasco's counterclaims of trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and common law claims of unfair competition and deceptive trade practices.   In order to prevail on these claims, Jasco must prove two elements:  (1) Jasco's mark is protectable and (2) Tel-Lock's use of the mark is likely to cause confusion among consumers. *Packman* v. *Chicago Tribune Co.*, 267 F.3d 628, 638 and n.8 (7th Cir. 2001) (citing *Eli Lilly & Co.* v. *Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000)).  Although the likelihood of confusion is a question of fact, the court may resolve this issue on summary judgment where the evidence is "so one-sided that there can be no doubt about how the question should be answered." *Id.* at 643, citing *Door Sys., Inc.* v. *Pro-Line Door Sys., Inc.*, 83 F.3d 169 at 171 (7th Cir. 1996).

In support of its motion for summary judgment, Tel-Lock asserts that Jasco does not have a protectable mark.  Tel-Lock further argues that there is insufficient evidence to demonstrate a likelihood of confusion.  In assessing the likelihood of confusion, courts have identified seven relevant factors that help in resolving the ultimate question: (1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether an actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff. *Promatek Indus., Ltd.* v. *Equitrac Corp.*, 300 F.3d 880, 812 (7th Cir. 2002).

In opposing Tel-Lock's motion for summary judgment on its counterclaims, Jasco submitted evidence that it is the owner of the registered trademark "Jasco." (Jasco's L.R. 56.1 Statement of Additional Facts at ¶ 1).  A registration with the U.S. Patent and Trademark Office is "prima facie

evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark . . . ." 15 U.S.C. § 1115. Thus, Jasco has demonstrated that it has a protectable mark.[11]

With regard to the likelihood of confusion, Jasco submitted evidence that "Jasco Products Co." was placed on the backside of the packaging of approximately 10,000 Security Jacks in the Spanish language warranty section. (Jasco's L.R. 56.1 Statement of Additional Facts at ¶¶ 2,3). The marks are not only similar, they are identical. The Security Jack and Lock Jack also are similar products in that they are both lockable telephone jacks that block incoming and outgoing calls.

At the same time, Tel-Lock's name appears more prominently at least six times on the same packaging. (Tel-Lock's L.R. 56.1, Ex. A). "Prominent display of different names on the marks has been held to reduce the likelihood of confusion where . . . the marks are otherwise similar." *Ziebart Int'l Corp.* v. *After Market Assocs.,* 802 F.2d 220, 227 (7th Cir. 1985), citing *Pignons S. A. de Mecanique de Precision* v. *Polaroid Corporation,* 657 F.2d 482, 487 (1st Cir. 1981); *Ye Olde Tavern Cheese Products, Inc.* v. *Planters Peanuts Division,* 261 F. Supp. 200, 206 (N.D. Ill. 1966), *aff'd mem.,* 394 F.2d 833 (7th Cir. 1967) (per curiam). Thus, while Jasco's mark appears on Tel-Lock's packaging, it is unlikely that it would cause confusion among consumers looking for either Jasco's product or Tel-Lock's product, particularly where the placement of "Jasco Products Co." on the Security Jack's packaging was limited to its backside where it would not be readily visible to a consumer while on display.

Jasco also offered evidence that its name is well-known in the work place and enjoys a very

---

[11] While Tel-Lock offered evidence demonstrating Jasco's abandonment of its registered mark, such evidence was excluded as a result of Tel-Lock's failure to comply with L.R. 56.1.

25

good reputation in the business. (Jasco's L.R. 56.1 Statement of Additional Facts at ¶ 7). In addition, Jasco produced evidence that a Security Jack containing "Jasco Products Co." on its packaging was purchased in July 2003. (Jasco's L.R. 56.1 Statement of Additional Facts at ¶ 8).

Jasco, however, failed to offer any evidence of actual confusion. The fact that Tel-Lock included "Jasco Products Co." on approximately 10,000 of its packages and that Jasco was unable to produce evidence of actual confusion "shows that such confusion is not a factor." *M-F-G Corp.* v. *EMRA Corp.*, 626 F. Supp. 699 at 704 (N.D. Ill. 1985) ("The fact that these two nationwide firms have been coexiting for many years, and that [plaintiff] has presented no evidence of actual confusion shows that such confusion is not a factor"). Jasco also did not produce any evidence regarding the degree of care likely to be used by consumers or that Calvin Flowers intended to pass off the Security Jack as a product of Jasco.[12]

While the similarity of the marks and the products weighs in favor of finding a likelihood of confusion, the absence of any evidence of actual confusion, the degree of care likely used by consumers, and the intent of Tel-Lock to pass off its Security Jack as a product of Jasco outweighs the other factors and fails to create a genuine issue of material fact on the likelihood of confusion. As a result, the court grants Tel-Lock's motion for summary judgment as to Jasco's counterclaims.

## IV. CONCLUSION

This matter should have been resolved at summary judgment. Because of the deficiencies of the parties' submissions and defendants' reliance on the testimony of an unsuitable witness, however, the court cannot bring a resolution to this case at this time. The court strongly encourages

---

[12]Jasco cited to the deposition of Calvin Flowers for the proposition that he approved the design of the Security Jack's packaging. The testimony referenced, however, did not substantiate this assertion.

26

the parties to discuss settlement prior to the pretrial conference.

For the reasons stated above, the defendants' motion for summary judgment [#50] is granted in part and denied in part and plaintiff's motion for summary judgment as to Jasco's counterclaims [#46] is granted.

Date: March 30, 2005               Enter: _____

                                           JOAN HUMPHREY LEFKOW
                                           United States District Judge